MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
IGINIO ARELLANES JIMENEZ and
SANTIAGO MENDEZ BARRERA,
*individually and on behalf of others similarly*
*situated,*

|                          |                                      |
|--------------------------|--------------------------------------|
|                          | **COMPLAINT**                        |
| *Plaintiffs*,            |                                      |
|                          | **COLLECTIVE ACTION UNDER**          |
| -against-                | **29 U.S.C. § 216(b)**               |
|                          |                                      |
| SOMICH DELI INC. (D/B/A PJ BERSTEIN | **ECF Case**             |

SOMICH DELI INC. (D/B/A PJ BERSTEIN
DELI), RESTAURANT SERVICES NYC
LLC. (D/B/A PJ BERSTEIN DELI), PJ'S
DELIKATESAN LLC (D/B/A PJ'S
DELIKATESAN), ALEX SLOBODSKI,
LEONID VAYNBERG, and STEVEN
SLOBODSKI,

*Defendants.*
-------------------------------------------------------X

Plaintiffs Iginio Arellanes Jimenez and Santiago Mendez Barrera , individually and on

behalf of others similarly situated (collectively, "Plaintiffs"), by and through their attorneys,

Michael Faillace & Associates, P.C., upon their knowledge and belief, and as against Somich Deli

Inc. (d/b/a PJ Berstein Deli), Restaurant Services NYC LLC. (d/b/a PJ Berstein Deli), PJ's

Delikatesan LLC (d/b/a PJ Berstein Deli) ("Defendant Corporations"), Alex Slobodski, Leonid

Vaynberg, and Steven Slobodski, ("Individual Defendants"), (collectively, "Defendants"), allege

as follows:

### NATURE OF ACTION

1.      Plaintiffs are former employees of Defendants Somich Deli Inc. (d/b/a PJ Berstein Deli), Restaurant Services NYC LLC. (d/b/a PJ Berstein Deli), PJ's Delikatesan LLC (d/b/a PJ Berstein Deli), Alex Slobodski, Leonid Vaynberg, and Steven Slobodski.

2.      Defendants own, operate, or control a deli, located at 1215 3rd Ave., New York, New York 10021 under the name "PJ Berstein Deli."

3.      Upon information and belief, individual Defendants Alex Slobodski, Leonid Vaynberg, and Steven Slobodski, serve or served as owners, managers, principals, or agents of Defendant Corporations and, through these corporate entities, operate or operated the deli as a joint or unified enterprise.

4.      Plaintiffs were employees of Defendants.

5.      Plaintiff Arellanes was employed as a delivery worker and Plaintiff Mendez was employed as a line cook at the deli located at 1215 3rd Ave., New York, New York 10021.

6.      Plaintiff Arellanes was ostensibly employed as a delivery worker. However, he was required to spend a considerable part of his work day performing non-tipped duties, including but not limited to cleaning the basement, taking out trash, tying boxes, cleaning the sidewalk, cleaning the dining area, cleaning the ovens, grills and fryers and sweeping and mopping (hereafter the "non-tipped duties").

7.      At all times relevant to this Complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate minimum wage, overtime, and spread of hours compensation for the hours that they worked.

8.      Rather, Defendants failed to maintain accurate recordkeeping of the hours worked, failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

9.      Further, Defendants failed to pay Plaintiffs the required "spread of hours" pay for any day in which they had to work over 10 hours a day.

10.     Defendants employed and accounted for Plaintiff Arellanes as a delivery worker in their payroll, but in actuality his duties required a significant amount of time spent performing the non-tipped duties alleged above.

11.     Regardless, at all relevant times, Defendants paid Plaintiff Arellanes at a rate that was lower than the required tip-credit rate.

12.     However, under both the FLSA and NYLL, Defendants were not entitled to take a tip credit because Plaintiff Arellanes's non-tipped duties exceeded 20% of each workday, or 2 hours per day, whichever is less in each day.  12 N.Y. C.R.R. §146.

13.     Upon information and belief, Defendants employed the policy and practice of disguising Plaintiff Arellanes's actual duties in payroll records by designating him as a delivery worker instead of a non-tipped employee; This allowed Defendants to avoid paying Plaintiff Arellanes at the minimum wage rate and enabled them to pay him at the lower tip-credit rate (which they still failed to do).

14.     In addition, Defendants maintained a policy and practice of unlawfully appropriating Plaintiff Arellanes's and other tipped employees' tips and made unlawful deductions from Plaintiff Arellanes's and other tipped employees' wages.

15.     Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

16.     At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

17.     Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq.* and 650 *et seq.* (the "NYLL"), and the "spread of hours" and overtime wage orders of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. tit. 12, § 146-1.6 (herein the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees and costs.

18.     Plaintiffs seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

20.     Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants operate a deli located in this district. Further, Plaintiffs were employed by Defendants in this district.

## PARTIES

*Plaintiffs*

21.     Plaintiff Iginio Arellanes Jimenez ("Plaintiff Arellanes" or "Mr. Arellanes") is an adult individual residing in Bronx County, New York. Plaintiff Arellanes was employed by Defendants at PJ Berstein Deli from approximately August 2013 until on or about July 30, 2017.

22.     Plaintiff Santiago Mendez Barrera ("Plaintiff Mendez" or "Mr. Mendez") is an adult individual residing in Kings County, New York. Plaintiff Mendez was employed by Defendants at PJ Berstein Deli from approximately July 2012 until on or about February 12, 2018.

*Defendants*

23.     At all relevant times, Defendants owned, operated, or controlled a deli, located at 1215 3rd Ave., New York, New York 10021 under the name "PJ Berstein Deli."

24.     Upon information and belief, Somich Deli Inc. (d/b/a PJ Berstein Deli) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 1215 3rd Ave., New York, New York 10021.

25.     Upon information and belief, Restaurant Services NYC LLC. (d/b/a PJ Berstein Deli) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 1215 3rd Ave., New York, New York 10021.

26.     Upon information and belief, PJ's Delikatesan LLC (d/b/a PJ Berstein Deli) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 1215 3rd Ave., New York, New York 10021.

27.     Defendant Alex Slobodski is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Alex Slobodski is sued

individually in his capacity as owner, officer and/or agent of Defendant Corporations. Defendant Alex Slobodski possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

28.    Defendant Leonid Vaynberg is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Leonid Vaynberg is sued individually in his capacity as owner, officer and/or agent of Defendant Corporations. Defendant Leonid Vaynberg possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

29.    Defendant Steven Slobodski is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Steven Slobodski is sued individually in his capacity as owner, officer and/or agent of Defendant Corporations. Defendant Steven Slobodski possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

*Defendants Constitute Joint Employers*

30.    Defendants operate a deli located in the Upper East Side section in Manhattan in New York City.

31.    Individual Defendants, Alex Slobodski, Leonid Vaynberg, and Steven Slobodski, possess operational control over Defendant Corporations, possess ownership interests in Defendant Corporations, and control significant functions of Defendant Corporations.

32.    Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

33.    Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

34.    Defendants jointly employed Plaintiffs (and all similarly situated employees) and are Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq.* and the NYLL.

35.    In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

36.    Upon information and belief, Individual Defendants Alex Slobodski, Leonid Vaynberg, and Steven Slobodski operate Defendant Corporations as either alter egos of themselves and/or fail to operate Defendant Corporations as entities legally separate and apart from themselves, by among other things:

        a)    failing to adhere to the corporate formalities necessary to operate Defendant Corporations as Corporations,

b) defectively forming or maintaining the corporate entities of Defendant Corporations, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

c) transferring assets and debts freely as between all Defendants,

d) operating Defendant Corporations for their own benefit as the sole or majority shareholders,

e) operating Defendant Corporations for their own benefit and maintaining control over these corporations as closed Corporations,

f) intermingling assets and debts of their own with Defendant Corporations,

g) diminishing and/or transferring assets of Defendant Corporations to avoid full liability as necessary to protect their own interests, and

h) Other actions evincing a failure to adhere to the corporate form.

37.    At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

38.    In each year from 2012 to 2018, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

39.    In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that were used in the deli on a daily basis are goods produced outside of the State of New York.

*Individual Plaintiffs*

40.     Plaintiffs are former employees of Defendants who were employed as a delivery worker and a line cook. However, the tipped workers spent over 20% of each shift performing the non-tipped duties described above.

41.     Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Iginio Arellanes Jimenez*

42.     Plaintiff Arellanes was employed by Defendants from approximately August 2013 until on or about July 30, 2017.

43.     Defendants ostensibly employed Plaintiff Arellanes as a delivery worker.

44.     However, Plaintiff Arellanes was also required to spend a significant portion of his work day performing the non-tipped duties described above.

45.     Although Plaintiff Arellanes ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

46.     Plaintiff Arellanes regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

47.     Plaintiff Arellanes's work duties required neither discretion nor independent judgment.

48.     Throughout his employment with Defendants, Plaintiff Arellanes regularly worked in excess of 40 hours per week.

49.     From approximately August 2013 until on or about July 30, 2017, Plaintiff Arellanes worked as a delivery worker from approximately 9:00 a.m. until on or about 9:30 p.m. to 9:45 p.m., 6 days a week (typically 75 to 76.5 hours per week).

50.     For approximately two weeks in this period, Plaintiff Arellanes worked as a dishwasher from approximately 12:00 p.m. until on or about 9:30 p.m. to 9:45 p.m., 6 days a week (typically 57 to 58.5 hours per week).

51.     Throughout his employment, Defendants paid Plaintiff Arellanes his wages in cash.

52.     From approximately August 2013 until on or about March 2017, Defendants paid Plaintiff Arellanes a fixed salary of $200 per week.

53.     From approximately March 2017 until on or about July 30, 2017, Defendants paid Plaintiff Arellanes a fixed salary of $366 per week (and an extra $100 in the weeks when he did some work as a dishwasher).

54.     For the two weeks that he worked as dishwasher, Defendants paid Plaintiff Arellanes a fixed salary of $85 per week.

55.     Plaintiff Arellanes's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

56.     For example, Defendants required Plaintiff Arellanes to work an additional 15 minutes past his scheduled departure time every day, and did not pay him for the additional time he worked.

57.     Plaintiff Arellanes was never notified by Defendants that his tips were being included as an offset for wages.

58.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Arellanes's wages.

59.     Defendants withheld a portion of Plaintiff Arellanes's tips; specifically, Defendants pocketed around $300 to $400 of the tips customers gave Plaintiff Arellanes for big delivery orders per week.

60.    Plaintiff Arellanes was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

61.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Arellanes regarding overtime and wages under the FLSA and NYLL.

62.    Defendants did not provide Plaintiff Arellanes an accurate statement of wages, as required by NYLL 195(3).

63.    In fact, Defendants adjusted Plaintiff Arellanes's paystubs so that they reflected inaccurate wages and hours worked.

64.    Defendants did not give any notice to Plaintiff Arellanes, in English and in Spanish (Plaintiff Arellanes's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

65.    Defendants required Plaintiff Arellanes to purchase "tools of the trade" with his own funds—including four bicycles and bicycles' supplies and maintenance.

*Plaintiff Santiago Mendez Barrera*

66.    Plaintiff Mendez was employed by Defendants from approximately July 2012 until on or about February 12, 2018.

67.    Defendants employed Plaintiff Mendez as a line cook.

68.    Plaintiff Mendez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

69.    Plaintiff Mendez's work duties required neither discretion nor independent judgment.

70.    Throughout his employment with Defendants, Plaintiff Mendez regularly worked in excess of 40 hours per week.

71.    From approximately July 2012 until on or about February 12, 2018, Plaintiff Mendez worked as a line cook from approximately 10:00 a.m. until on or about 9:00 p.m. to 9:15 p.m., 6 days a week (typically 66 to 67.5 hours per week).

72.    For approximately a month during summertime of each year of employment, Plaintiff Mendez worked as a line cook from approximately 10:00 a.m. until on or about 9:00 p.m. to 9:15 p.m., 7 days a week (typically 77 to 78.75 hours per week).

73.    Throughout his employment, Defendants paid Plaintiff Mendez his wages in a combination of check and cash.

74.    From approximately July 2012 until on or about April 2015, Defendants paid Plaintiff Mendez a fixed salary of $600 per week.

75.    From approximately April 2015 until on or about February 12, 2018, Defendants paid Plaintiff Mendez a fixed salary of $720 per week.

76.    During the four weeks of summertime of each year of employment when Plaintiff Mendez worked 7 days a week, Defendants paid him for an extra day (which was $100 extra in each year from 2012 to 2014, and $120 in each year from 2015 to 2017).

77.    Plaintiff Mendez's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

78.    For example, Defendants required Plaintiff Mendez to work an additional 15 minutes past his scheduled departure time every day, and did not pay him for the additional time he worked.

79.    Prior to January 2018, Plaintiff Mendez was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

80.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Mendez regarding overtime and wages under the FLSA and NYLL.

81.     Defendants did not provide Plaintiff Mendez an accurate statement of wages, as required by NYLL 195(3).

82.     In fact, Defendants adjusted Plaintiff Mendez's paystubs so that they reflected inaccurate wages and hours worked.

83.     Defendants did not give any notice to Plaintiff Mendez, in English and in Spanish (Plaintiff Mendez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Defendants' General Employment Practices*

84.     At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 40 hours a week without paying them appropriate minimum wage, spread of hours pay, and overtime compensation as required by federal and state laws.

85.     Plaintiffs were victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they were owed for the hours they worked.

86.     Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked, and resulting in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

87.     Defendants habitually required Plaintiffs to work additional hours beyond their regular shifts but did not provide them with any additional compensation.

88.     Defendants required all delivery workers to perform general non-tipped tasks in addition to their primary duties as a delivery workers. Plaintiff Arellanes and all similarly situated employees, ostensibly was employed as a tipped employee by Defendants, although his actual duties included a significant amount of time spent performing non-tipped duties.

89.     Plaintiff Arellanes and all other tipped workers were paid at a rate that was lower than the lower tip-credit rate by Defendants.

90.      However, under state law, Defendants were not entitled to a tip credit because the tipped workers' and Plaintiff Arellanes's non-tipped duties exceeded 20% of each workday (or 2 hours a day, whichever is less) (12 N.Y.C.R.R. § 146).

91.     New York State regulations provide that an employee cannot be classified as a tipped employee on any day in which he or she has been assigned to work in an occupation in which tips are not customarily received. (12 N.Y.C.R.R. §§137-3.3 and 137-3.4). Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

92.     Plaintiff Arellanes's duties were not incidental to his occupation as a tipped worker, but instead constituted entirely unrelated general deli work with duties, including the non-tipped duties described above.

93.     In violation of federal and state law as codified above, Defendants classified Plaintiff Arellanes and other tipped workers as tipped employees, and paid them at a rate that was lower than the lower tip-credit rate when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

94.     Defendants failed to inform Plaintiff Arellanes, who received tips, that Defendants intended to take a deduction against Plaintiff Arellanes's earned wages for tip income, as required by the NYLL before any deduction may be taken.

95.     Defendants failed to inform Plaintiff Arellanes, who received tips, that his tips were being credited towards the payment of the minimum wage.

96.     Defendants failed to maintain a record of tips earned by Plaintiff Arellanes who worked as a delivery worker for the tips he received.

97.     As part of its regular business practice, Defendants intentionally, willfully, and repeatedly harmed Plaintiff Arellanes who received tips, by engaging in a pattern, practice, and/or policy of violating the FLSA and the NYLL. This policy and pattern or practice included depriving Plaintiff Arellanes and other delivery workers of a portion of the tips earned during the course of employment.

98.     Defendants unlawfully misappropriated charges purported to be gratuities received by Plaintiff Arellanes, and other tipped employees, in violation of New York Labor Law § 196-d (2007).

99.     Under the FLSA and NYLL, in order to be eligible for a "tip credit," employers of tipped employees must either allow employees to keep all the tips that they receive, or forgo the tip credit and pay them the full hourly minimum wage.

100.    Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL by failing to maintain accurate and complete timesheets and payroll records.

101.    Defendants' time keeping system did not reflect the actual hours that Plaintiff Arellanes worked.

102.    Plaintiffs were paid their wages in cash and in a combination of check and cash.

103.    Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

104.    Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

105.    Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

106.    Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated former workers.

107.    Defendants failed to provide Plaintiffs  and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

108.    Defendants failed to provide Plaintiffs  and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage,

including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

109.    Plaintiffs bring their FLSA minimum wage, overtime compensation, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA Class members"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period").

110.    At all relevant times, Plaintiffs and other members of the FLSA Class were similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required minimum wage, overtime pay at a one and one-half their regular rates for work in excess of forty (40) hours per workweek under the FLSA, willfully taking improper wage deductions and other improper credits against Plaintiff Arellanes' wages and willfully failing to keep records required by the FLSA.

111.    The claims of Plaintiffs stated herein are similar to those of the other employees.

## FIRST CAUSE OF ACTION

### VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA

112.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

113.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).  Defendants had the power to hire and

- 17 -

fire Plaintiffs (and the FLSA Class Members), controlled the terms and conditions of their employment, and determined the rate and method of any compensation in exchange for their employment.

114.    At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

115.    Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

116.    Defendants failed to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

117.    Defendants' failure to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

118.    Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA

119.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

120.    At all times relevant to this action, Defendants were Plaintiffs' employers (and employers of the putative FLSA Class members) within the meaning of the Fair Labor Standards Act. 29 U.S.C. § 203(d). Defendants had the power to hire and fire Plaintiffs (and the FLSA Class members), controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for their employment.

121.     Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiffs (and the FLSA Class members) overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

122.     Defendants' failure to pay Plaintiffs (and the FLSA Class members), overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

123.     Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

### VIOLATION OF THE NEW YORK MINIMUM WAGE ACT

124.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

125.     At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.  Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of their employment, and determined the rates and methods of any compensation in exchange for their employment.

126.     Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiffs less than the minimum wage.

127.     Defendants' failure to pay Plaintiffs the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

128.     Plaintiffs were damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS

### OF THE NEW YORK STATE LABOR LAW

129.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

130.    Defendants, in violation of N.Y. Lab. Law § 190 *et seq*., and supporting regulations of the New York State Department of Labor, failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

131.    Defendants' failure to pay Plaintiffs overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

132.    Plaintiffs were damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

### VIOLATION OF THE SPREAD OF HOURS WAGE ORDER

### OF THE NEW YORK COMMISSIONER OF LABOR

133.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

134.    Defendants failed to pay Plaintiffs one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiffs' spread of hours exceeded ten hours in violation of NYLL §§ 650 *et seq*. and 12 N.Y.C.R.R. §§ 146-1.6.

135.    Defendants' failure to pay Plaintiffs an additional hour's pay for each day Plaintiffs' spread of hours exceeded ten hours was willful within the meaning of NYLL § 663.

136.    Plaintiffs were damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

### VIOLATION OF THE NOTICE AND RECORDKEEPING

### REQUIREMENTS OF THE NEW YORK LABOR LAW

137.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

138.    Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether paid by

the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

139.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## SEVENTH CAUSE OF ACTION

### VIOLATION OF THE WAGE STATEMENT PROVISIONS

### OF THE NEW YORK LABOR LAW

140.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

141.    With each payment of wages, Defendants failed to provide Plaintiffs with an accurate statement listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

142.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## EIGHTH CAUSE OF ACTION

### RECOVERY OF EQUIPMENT COSTS

143.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

144.    Defendants required Plaintiffs to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs, further reducing their wages in violation of the FLSA and NYLL.  29 U.S.C.  § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

145.    Plaintiffs were damaged in an amount to be determined at trial.

## NINTH CAUSE OF ACTION

## UNLAWFUL DEDUCTIONS FROM TIPS IN VIOLATION

## OF THE NEW YORK LABOR LAW

146.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

147.    At all relevant times, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

148.    New York State Labor Law § 196-d prohibits any employer or his agents, including owners and managers, from demanding or accepting, directly or indirectly, any part of the gratuities received by an employee, or retaining any part of a gratuity, or any charge purported to be a gratuity, for an employee.

149.    Defendants unlawfully misappropriated a portion of Plaintiffs' tips that were received from customers.

150.    Defendants knowingly and intentionally retained a portion of Plaintiffs' tips in violations of the NYLL and supporting Department of Labor Regulations.

151.    Plaintiffs were damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a)     Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)     Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(c)     Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(d)     Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA Class members' compensation, hours, wages, and any deductions or credits taken against wages;

(e)     Declaring that Defendants' violations of the provisions of the FLSA were willful as to Plaintiffs and the FLSA Class members;

(f)     Awarding Plaintiffs and the FLSA Class members damages for the amount of unpaid minimum wage, overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)     Awarding Plaintiffs and the FLSA Class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum wage and overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)     Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(i)    Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(j)    Declaring that Defendants violated the spread-of-hours requirements of the NYLL and supporting regulations as to Plaintiffs;

(k)    Declaring that Defendants violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' compensation, hours, wages and any deductions or credits taken against wages;

(l)    Declaring that Defendants' violations of the New York Labor Law were willful as to Plaintiffs and the FLSA Class members;

(m)    Awarding Plaintiffs damages for the amount of unpaid minimum wage and overtime compensation, and for any improper deductions or credits taken against wages, as well as awarding spread of hours pay under the NYLL as applicable

(n)    Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(o)    Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, overtime compensation, and spread of hours pay shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(p)    Awarding Plaintiffs and the FLSA Class members pre-judgment and post-judgment interest as applicable;

(q)    Awarding Plaintiffs and the FLSA Class members the expenses incurred in this action, including costs and attorneys' fees;

(r)    Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(s)    All such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated: New York, New York
         March 1, 2018

MICHAEL FAILLACE & ASSOCIATES, P.C.

By:    _____/s/ Michael Faillace_____
        Michael Faillace [MF-8436]
        60 East 42nd Street, Suite 4510
        New York, New York 10165
        Telephone: (212) 317-1200
        Facsimile: (212) 317-1620
        *Attorneys for Plaintiffs*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165
––––––––

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

February 19, 2018

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                Santiago Mendez Barrera

Legal Representative / Abogado:        Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                    19 de febrero de 2018

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

February 22, 2018

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Iginio Arellanes Jimenez

Legal Representative / Abogado:          Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                              22 de febrero de 2018

*Certified as a minority-owned business in the State of New York*