# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 East 42nd Street, Suite 4510                                              Telephone: (212) 317-1200
New York, New York 10165                                                Facsimile: (212) 317-1620
_____

michael@faillacelaw.com

June 13, 2019

**BY ECF**
Hon. Barbara C. Moses
United States Magistrate Judge
United States District Court
Daniel Patrick Moynihan
500 Pearl Street
New York, New York 10007

Re:    Arellanes Jimenez et al v. Somich Deli Inc. et al.;
Case No. 18-cv-01868-BM

Your Honor:

    This office represents Plaintiffs Iginio Arellanes Jimenez and Santiago Mendez Barrera ("Plaintiffs") in the above referenced matter.  Plaintiffs write to submit this joint letter, along with Defendants' counsel, setting forth our views on why the agreed upon settlement in this matter is fair.

    The parties have agreed to a negotiated settlement ("Agreement") after extensive settlement discussions amongst the parties and before Your Honor.  A copy of the proposed Agreement is attached hereto as "Exhibit A."  We therefore ask the Court to approve the settlement, pursuant to _Cheeks v. Freeport Pancake House_, Inc., 796 F.3d 199 (2d Cir. 2015) and dismiss the case with prejudice.

## 1.  <u>Background</u>

    Plaintiffs filed their Complaint against Defendants alleging claims for unpaid minimum wage, overtime wages, liquidated damages, interest, attorneys' fees, and costs pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 _et seq_. (FLSA), the New York Minimum Wage Act, N.Y. Lab. Law § 650 _et seq._, and the annual notice and wage statement requirements of the New York Labor Law (N.Y. Lab. Law. § 195).  In response, Defendants, through their respective counsel, filed an Answer, denying the Plaintiffs' allegations.

**<u>Plaintiff Iginio Arellanes Jimenez</u>**

<u>Plaintiffs' position is as follows:</u>

Page 2

Plaintiff Iginio Arellanes Jimenez ("Plaintiff Arellanes") worked for Defendants ostensibly as a delivery worker from approximately August 2013 until on or about July 30, 2017. Throughout Plaintiff Arellanes' employment, he typically worked 75 to 76.5 hours per week, except for a two-week period in which he worked as a dishwasher for typically 57 to 58.5 hours per week. From approximately August 2013 until in or about March 2017, Defendants paid Plaintiff Arellanes a fixed salary of $200.00 per week in cash. From approximately March 2017 until on or about July 30, 2017, Defendants paid Plaintiff Arellanes a fixed salary of $366.00 per week in cash (and an extra $100.00 during the weeks when he did some work as a dishwasher). Additionally, Defendants paid Plaintiff Arellanes a fixed salary of $85.00 per week for the two-week period in which Plaintiff Arellanes worked solely as a dishwasher. Defendants did not provide Plaintiff Arellanes with accurate wage statements with each payment of wages, as required by NYLL §195(3), nor did they provide him with a wage notice any time throughout his employment, as required by NYLL §195(1).

      <u>Defendants' position is as follows:</u>

Defendants deny and reject Plaintiff Arellanes's, allegations as to the hours worked, compensation paid, and notices provided. Defendants deny that they violated any state, local, or federal statutes with regard to Plaintiff Arellanes or his employment.

## Plaintiff Santiago Mendez Barrera

      <u>Plaintiffs' position is as follows:</u>

Plaintiff Santiago Mendez Barrera ("Plaintiff Mendez") worked for Defendants as a line cook from approximately July 2012 until on or about February 12, 2018. Throughout his employment, Plaintiff Mendez typically worked 66 to 67.5 hours per week, except for one month during summertime of each year of employment, when Plaintiff Mendez would typically work 77 to 78.75 hours per week. From approximately July 2012 until in or about April 2015, Defendants paid Plaintiff Mendez a fixed salary $600.00 per week in a combination of check and cash. From approximately April 2015 until on or about February 12, 2018, Defendants paid Plaintiff Mendez a fixed salary of $720.00 per week in a combination of check and cash. Additionally, during the four weeks of summertime of each year of employment when Plaintiff Mendez worked 7 days per week, Defendants paid him for an extra day; specifically, Defendants paid Plaintiff Mendez an extra $100.00 per week from 2012 to 2014 and an extra $120.00 per week from 2015 to 2017. Defendants did not provide Plaintiff Mendez with accurate wage statements with each payment of wages, as required by NYLL §195(3), nor did they provide him with a wage notice any time throughout his employment, as required by NYLL §195(1).

      <u>Defendants' position is as follows:</u>

Defendants deny and reject Plaintiff Mendez's, allegations as to the hours worked, compensation paid, and notices provided. Defendants deny that they violated any state, local, or federal statutes with regard to Plaintiff Mendez or his employment.

Page 3

### 2. Settlement Terms

Plaintiff Arellanes alleges he was entitled to back wages of approximately $115,564.78. Plaintiff Arellanes estimates that if he had recovered in full for his claims, he would be entitled to approximately $375,756.75 which represents calculated actual damages, penalties, and interest, but excludes attorneys' fees and costs. Plaintiff Mendez alleges he was entitled to back wages of approximately $123,750.00. Plaintiff Mendez estimates that if he had recovered in full for his claims, he would be entitled to approximately $336,812.37 which represents calculated actual damages, penalties, and interest, but excludes attorneys' fees and costs. A copy of Plaintiffs' damages chart, breaking down each amount sought from Defendants, is attached as "Exhibit B." The parties have agreed to settle this action for the total sum of $120,000. The settlement will be paid in monthly installments.

Under *Lynn's Food*, a court may approve a settlement where it "reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le v. Sita Information Networking Computing USA, Inc.*, No. 07 Civ. 0086, 2008 U.S. Dist. LEXIS 46174 at *2 (E.D.N.Y. June 12, 2008) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)); *see also Kopera v. Home Depot U.S.A., Inc.*, No. 09 Civ. 8337, 2011 U.S. Dist. LEXIS 71816, at *2 (S.D.N.Y. June 24, 2011) ("If the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved.").

Throughout the litigation, there were sharply contested factual and legal disputes that went to the heart of Plaintiffs' claims. Defendants were adamant Plaintiffs worked less hours than claimed, and indicated they were willing to provide witnesses to this effect. Defendants also raised defenses as to whether a tip credit was applied to wages, and further presented issues related to financial ability to pay a judgment.

Considering the risks in this case outlined above, Plaintiff believes that this settlement is an excellent result, and should be approved as fair. *See Meigel v. Flowers of the World, NYC, Inc.*, 2012 U.S. Dist. LEXIS 2359, at *2-3 (S.D.N.Y. Jan. 9, 2012) ("Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement.").

### 3. Plaintiff's Attorneys' Fees are Fair and Reasonable

Under the settlement, and in accordance with their retainer agreement with Plaintiffs, Plaintiffs' counsel will receive $39,999.79 from the settlement fund as attorneys' fees and costs. This represents roughly one third of the recovery in this litigation (inclusive of costs) as well as a reduction in fees from what is identified in Plaintiffs' retainer agreement, which provides that forty percent of Plaintiffs' recovery will be retained by the firm plus costs.

Plaintiffs' counsel's lodestar in this case is $25,733.28. A copy of Plaintiffs' billing record is attached as "Exhibit C." Mr. Michael Faillace's standard billing rate is $450 an hour (MF), Mr. Joshua Androphy's standard billing rate is $400 an hour (JA), Mr. Daniel Tannenbaum's standard

Page 4

billing rate is $350 an hour (DT) and Ms. Haleigh Amant's standard billing rate was $250 an hour (DT and HA, respectively). PL stands for work done by paralegals at a standard billing rate of $100 an hour.

The amount provided to Plaintiff's counsel under the settlement is fair and reasonable (roughly 1.5 times the lodestar) and well within the range of fees typically awarded in cases in this Circuit. *See Pinzon v. Jony Food Corp.*, No. 18-CV-105(RA), 2018 U.S. Dist. LEXIS 87424 (S.D.N.Y. May 24, 2018) (awarding this firm a third, or 5.23 times the lodestar, in an early settlement and "recognizing the importance of encouraging the swift resolution of cases like this one and avoiding 'creat[ing] a disincentive to early settlement'—particularly where such settlement has provided Plaintiff with a substantial and speedy result." (quoting *Hyun v. Ippudo USA Holdings et al.*, No. 14-CV-8706 (AJN), 2016 U.S. Dist. LEXIS 39115, 2016 WL 1222347, at *3 (S.D.N.Y. Mar. 24, 2016).; *Shapiro v. JPMorgan Chase & Co.*, No. 11-CV-7961 (CM), 2014 U.S. Dist. LEXIS 37872, 2014 WL 1224666, at *24 (S.D.N.Y. Mar. 21, 2014) ("Lodestar multipliers of nearly 5 have been deemed 'common' by courts in this District."); *Castaneda v. My Belly's Playlist LLC*, No. 15 Civ. 1324 (JCF) (S.D.N.Y. Aug. 17, 2015) (Francis, M.J.) (awarding the plaintiffs' attorneys a contingency fee of one-third to account for risks in litigation); *Calle v. Elite Specialty Coatings Plus, Inc.,* 2014 U.S. Dist. LEXIS 164069 at *9 (E.D.N.Y. Nov. 19, 2014) ("A one-third contingency fee is a commonly accepted fee in this Circuit."). In light of the nature of the issues herein and the extensive negotiations necessary to reach the agreed-upon settlement, Plaintiff's requested award is reasonable. *See Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. at 60; *see also McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010).

Given Plaintiff's counsels' significant experience representing Plaintiffs in New York City in wage and hour litigation, Plaintiff's counsel was able to obtain an excellent result with relatively low expense due to the parties' cooperative exchange of information and frequent and on-going negotiations.

A brief biography of the attorneys who performed billed work in this matter is as follows:

I am the Managing Member of Michael Faillace & Associates, P.C, and have been in practice since 1983. From 1983 to 2000, I was in-house Employment Counsel with International Business Machines Corporation (IBM). I taught employment discrimination as an Adjunct Professor at Fordham University School of Law since 1992 and at Seton Hall University Law School from 1995 to 1998, and am a nationally-renowned speaker and writer on employment law. I am also the author of the ADA, Disability Law Deskbook: The Americans with Disabilities Act in the Workplace, published by Practicing Law Institute (PLI), and other employment law publications and presentations.

Joshua Androphy is senior attorney at Michael Faillace & Associates, P.C., and is billed at an hourly rate of $400.00. This is his standard rate for matters on which he is paid at an hourly rate. Androphy graduated from Columbia University School of Law in 2005, where he was a Harlan Fiske Stone Scholar and Managing Editor of the Columbia Journal of Law and Social Problems. Following law school, Androphy developed a broad background in litigation at Olshan Frome Wolosky LLP, where he practiced complex commercial litigation, employment litigation, securities litigation and contract litigation for seven years. At his departure from that firm his

Page 5

billing rate was $450 per hour. Since joining Michael Faillace & Associates, P.C. in 2012, Androphy has been responsible for litigating all aspects of individual, collective, and class action employment claims in state and federal court. Androphy was named a Super Lawyers Rising Star in 2014, 2015, 2016, and 2017. Androphy has served as trial counsel at 17 trials since joining Michael Faillace & Associates, P.C., almost all as lead trial counsel.

Daniel Tannenbaum is an associate at Michael Faillace & Associates, P.C. He graduated Hofstra Law School in 2008, and is admitted to the New York Bar, New Jersey Bar, United States District Court, Southern District of New York and the United States District Court, Eastern District of New York. Since law school he has practiced labor and employment law and commercial litigation at a number of law firms. Since joining Michael Faillace & Associates, P.C. in March 2019, he has been responsible for a caseload involving all aspects of the firm's employment docket in federal court.

Haleigh Amant was an associate at Michael Faillace & Associates, P.C. Since graduating law school in 2017 from the George Washington University Law school, she has been practicing strictly employment law and representing employees in wage and hour disputes.

Should Your Honor have any questions or concerns regarding this settlement, the parties are happy to address them. The parties thank the Court for its attention to this matter.

Respectfully submitted,

/s/Michael Faillace
Michael Faillace, Esq.
MICHAEL FAILLACE & ASSOCIATES, P.C.
Attorneys for the Plaintiff

Enclosures